James E. FLAHERTY, Plaintiff,

v.

The NATIONAL MARINE FISHERIES SERVICE, FINANCIAL SERVICES DIVISION, National Oceanic and Atmospheric Administration, United States Department of Commerce, C. William Verity, in his official capacity as Secretary of Commerce, William Evans, in his official capacity as Assistant Administrator for Fisheries, James E. Douglas, Jr., in his official capacity as Acting Administrator for Fisheries, Michael L. Grable, in his official capacity as Chief, Financial Services Division, National Marine Fisheries Service, and Charles L. Cooper, in his official capacity as Program Leader, National Marine Fisheries Service, Defendants.

No. 88 C 1275.

United States District Court,
E.D. New York.

Oct. 13, 1988.

James E. Flaherty, Hampton Bays, N.Y., pro se.

Andrew J. Maloney, U.S. Atty. Brooklyn, N.Y. (Yvette Rivera, Asst. U.S. Atty., of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, an offshore commercial lobsterman, brought this action *pro se* against the National Marine Fisheries Service, Financial Services Division (Fisheries), and the other named defendants under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1982) (the APA), the Fisherman's Protective Act of 1967, 22 U.S.C. § 1971 *et seq.* (1982) (the Act), and the due process clause of the Fifth Amendment.

The complaint alleges that Fisheries, upon receipt of plaintiff's application for compensation from the Fishing Vessel and Gear Damage Compensation Fund (the Fund), *see* 22 U.S.C. § 1980(f), for the loss of 636 lobster pots, unlawfully failed to consider all evidence presented by plaintiff in his application and falsely asserted that complete prepayment of the invoice from the supplier who rigged the traps was a prerequisite to compensation. These actions were, in plaintiff's view, "arbitrary and capricious" within the meaning of 5 U.S.C. § 706(2)(A) and a denial of his due process rights under the fifth amendment.

Plaintiff further alleges that Fisheries violated his right under the applicable regulations to a rebuttable presumption of loss, *see* 50 C.F.R. § 258.34(b), (c) (1986), and failed to notify the plaintiff of any deficiency in his application as required by 50 C.F.R. § 258.33(m). (50 C.F.R. § 258 has since been transferred to 22 C.F.R. § 33. Fishermen's Protective Fund; Transfer of Administration, 52 Fed.Reg. 7533 (1987). Since the regulations have not yet appeared in their new location, however, this opinion will refer to the original section number.)

The complaint prays for declaratory and injunctive relief, including a vacation of Fisheries' "final determination" on plaintiff's application and a remand to the Assistant Administrator for Fisheries for reconsideration.

Defendants moved to dismiss the complaint under Fed.R.Civ.Pro. 12(b)(1) for lack of subject matter jurisdiction on two grounds: (1) plaintiff's request for declaratory and injunctive relief is in effect a disguised monetary claim for more than $10,000, over which the district court has no jurisdiction, 28 U.S.C. §§ 1346, 1491; and, in the alternative, (2) the APA precludes judicial review of the agency's action because that action is committed to the absolute discretion of the agency. 5 U.S.C. § 701(a)(2).

Plaintiff claims that about December 17, 1986, he discovered the loss of 636 lobster pots out of a total of 900 deployed. On January 10, 1987, he submitted to Fisheries a claim for $64,436 against the Fund for his lost gear. On October 23, 1987, Fisheries issued an initial determination disallowing his claim. Plaintiff filed an administrative appeal pursuant to 50 C.F.R. § 258.38(b) on November 22, 1987. He supplemented his claim with additional written data under 50 C.F.R. § 258.38(c) on January 23, 1988. On March 25, 1988, Fisheries issued a final determination denying plaintiff's claim. Plaintiff then brought this action.

Section 10 of the Act, 22 U.S.C. § 1980, as amended, establishes a system for compensating American fisherman for the loss of vessels or gear due to the activities of foreign fishermen operating within 200 miles of the United States. The statute grants broad discretion to the Secretary of

Commerce to prescribe the manner in which application for and determination of compensation shall be made. 22 U.S.C. § 1980(c), (d). The question is whether a district court may review the exercise of this discretion.

## I. *The Tucker Act*

The doctrine of sovereign immunity bars suit against federal agencies and officials unless Congress has waived immunity by statute. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The Tucker Act, which defines the terms on which Congress has waived the immunity of the United States, vests exclusive jurisdiction over claims for damages exceeding $10,000 in the Claims Court. 28 U.S.C. §§ 1346(b), 1491. *See, e.g., Hahn v. United States,* 757 F.2d 581, 586 (3d Cir. 1985).

Defendants claim that plaintiff's prayer for declaratory and injunctive relief is a disguised claim for monetary damages of $64,436. They point out that where the "prime objective of the plaintiff is to obtain money from the Government," plaintiff cannot avoid the jurisdiction of the Claims Court by framing his complaint as a request for declaratory or injunctive relief. *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983). If defendants' characterization of plaintiff's action is correct, then this court should dismiss the action for lack of subject matter jurisdiction.

Plaintiff argues that his "prime objective" is not to obtain damages, but to have his case remanded to Fisheries for reconsideration in a lawful manner. Indeed, plaintiff admits that this court has no power to grant him money damages.

■ The complaint does not ask the court to grant a monetary award. Plaintiff's ultimate objective, however, is monetary compensation from the United States government for his lost gear. The exclusive jurisdiction of the Claims Court cannot be circumvented "merely by naming a Government officer as defendant and praying for an injunction that the money of the United States, in its Treasury, be paid by the named defendant." *Hoopa Valley Tribe v. United States,* 219 Cl.Ct. 492, 596 F.2d 435, 443 (1979). But that is not what plaintiff has done.

■ Despite the rather broad language of *B.K. Instrument, supra,* "district court jurisdiction over a suit for nonmonetary relief is not foreclosed by the fact that it may later be the basis for an award of damages against the United States." *Hahn v. United States, supra,* at 589. In this case, plaintiff does not ask the court to direct payment of any monies or to determine the amount to which he is entitled. He merely seeks an order vacating the final determination and ordering Fisheries to reconsider his application. The Second Circuit has held that a complaint "seeking an order requiring lawful agency consideration of the [plaintiff's] application, rather than a direct award of funds," is properly within the jurisdiction of the district court. *Alan Guttmacher Institute v. McPherson,* 805 F.2d 1088, 1096 (2d Cir.1986).

Although plaintiff's ultimate goal is undoubtedly to obtain compensation from the government, the relief he requests would not be "the equivalent of obtaining money damages." *B.K. Instrument, supra,* at 727. If the court were to order a remand of plaintiff's case, Fisheries would have discretion, within legal limits, to determine whether plaintiff is entitled to compensation and, if so, how much. Plaintiff's complaint is thus not merely a disguised claim for damages exceeding $10,000 within the exclusive jurisdiction of the Claims Court.

## II. *Agency Discretion*

Although the Tucker Act does not bar jurisdiction, this court cannot review defendants' action on plaintiff's application unless Congress has also waived the sovereign immunity of the United States under the APA.

■ Defendants argue that the Act commits the determination of eligibility for compensation to the absolute discretion of the Chief of Fisheries and precludes judicial review of that determination. *See* 5 U.S.C. § 701(a)(2). Citing *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985), they contend that

the Act is so broadly drawn as to give the court no meaningful standard by which to judge the agency's exercise of discretion. Defendants also claim that Congress's use of the phrase "final determination," 22 U.S.C. § 1980(d)(4), to describe the last stage of administrative review indicates Congress's intent to preclude judicial review.

Plaintiff urges that the Act and the regulations provide clear standards for review, and that defendants have failed to meet those standards. Specifically, he points to their alleged failure to meet the deadlines under 22 U.S.C. § 1980(d)(1) and properly to rebut the presumption of causation by a foreign vessel imposed by 50 C.F.R. § 258.34. Plaintiff also disputes the government's interpretation of the "final determination" language in the statute, arguing that it simply refers to the stage at which administrative remedies are exhausted.

The Act's reference to the "final determination" seems more plausibly to indicate the last stage in the administrative process rather than to preclude judicial review. Nothing in the statute explicitly or implicitly indicates Congressional purpose to preclude review within the meaning of 5 U.S.C. § 701(a)(1). Although the statute does not explicitly provide for review, such review "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). No such reason is present here.

■ The limitation in 5 U.S.C. § 701(a)(2), precluding review to the extent that "agency action is committed to agency discretion by law," poses a more difficult question. The Supreme Court has described this exception to the general availability of judicial review as "very narrow" and "rare." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Administrative action is usually reviewable unless " 'either (a) congressional intent is discernible to make it unreviewable, or (b) the subject matter is for some reason inap-

propriate for judicial consideration.' " *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 303 (2d Cir.1971) (quoting *K. Davis, Administrative Law Treatise* § 28.16, at 965 (Supp.1970)).

The legislative history refers repeatedly to the compensation program as a "modified no-fault system." *See* 124 Cong.Rec. 9280–81 (1978); H.R.Rep. No. 1029, 95th Cong., 2d Sess. 14 (1978), U.S.Code & Admin.News 1978, p. 1768. Perhaps the use of this phrase suggests, as the government argues, that efficient consideration of claims is to be valued over thorough review. But more likely the phrase describes the program as eliminating the need for fishermen to identify and sue the vessel that caused damage to their own ship or gear. The subject matter is certainly appropriate for judicial consideration. It involves straightforward inquiry, to which the federal courts are accustomed, into the factual basis for an agency adjudication.

In *Heckler v. Chaney, supra*, at 830, 105 S.Ct. at 1655, the Supreme Court indicated that an action is committed to agency discretion when there is "no meaningful standard against which to judge the agency's exercise of discretion"—i.e., it is "impossible" to say that the agency has abused its discretion under 5 U.S.C. § 706(2)(A). It is not "impossible" under any circumstances to determine whether Fisheries abused its discretion under the Act.

It is true that the statute, like many others, does not provide explicit guidelines for agency action. It grants Fisheries broad discretion to determine the form and manner of application for compensation, *see* 22 U.S.C. § 1980(c), (d), and does not say how individual claims are to be determined. But it clearly specifies who is to be eligible for compensation. *See* 22 U.S.C. § 1980(b). Fisheries is not free to deny compensation to claimants who qualify for it and comply with Fisheries' own procedural regulations. *See, e.g., Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

Although this court may not substitute its judgment for that of Fisheries, it must make a "searching and careful" inquiry

into the facts to determine that the agency's decision was "based on a consideration of the relevant factors" and that there was no "clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* 401 U.S. at 416, 91 S.Ct. at 824. This standard for review, although "narrow," *id.,* is nonetheless "meaningful" and judicially manageable.

The court concludes that it has jurisdiction to review the actions of Fisheries to determine whether its decision met that standard.

However, the decision of Fisheries is couched in such terms as to make it impossible for the court to fulfill its responsibility to review. Plaintiff alleges that he has provided Fisheries with all of the evidence required under the regulations and requested by Fisheries. The exhibits to plaintiff's complaint, including the correspondence between him and various Fisheries officials and the affidavits, invoices, cancelled checks, and the like offered by plaintiff, appear to bear out his claim.

Fisheries' final determination, dated March 25, 1988, denied his application in the following words:

Our analysis reveals that you did not provide acceptable corroborative evidence showing that you had deployed and operated 900 pots prior to a loss of 636 pots on December 17, 1986. In addition, you failed to prove that 636 pots were lost on that date. Furthermore, you did not provide acceptable evidence corroborating that a $31,305 transaction for the rigging of 450 of your pots actually occurred, or that the pots were actually rigged.

This determination simply restates the reasons for denial offered in the initial determination.

In reviewing an administrative determination, we must "judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). The basis for the agency's action must be clear. *Id.* at 196–97, 67 S.Ct. 1577–78. It is unclear to the court in what respect plaintiff's proffered evidence is inadequate to establish the facts mentioned in the final determination. He submitted affidavits, depositions, paid invoices, cancelled checks, and a trip ticket to substantiate the deployment of 900 traps and the loss of 636 traps.

This evidence appears to be in the form prescribed by 50 C.F.R. § 258.33 and the requests of Fisheries, and none of it strikes us as flimsy or incredible on its face. The $31,305 transaction is somewhat more difficult to verify because plaintiff paid for the rigging partially in kind. But he submitted affidavits attesting to the performance of the rigging and the value of the goods and services exchanged for the rigging, as well as invoices, cancelled checks, and copies of the leases for a cottage and a boat that constituted part of the compensation for the rigging. This evidence seems to satisfy the regulations and Fisheries' obvious need to weed out spurious claims.

The final determination does not specify why plaintiff's proofs were judged insufficient. Without knowing the reasons for the purported inadequacy of plaintiff's evidence, the court cannot be certain that the determination was within the range of discretion granted the agency by Congress within the meaning of 5 U.S.C. § 701(a)(2). The court therefore will remand to Fisheries for further articulation of its reasons for denying plaintiff's claim. *See, e.g., Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* 401 U.S. at 420, 91 S.Ct. at 825.

Since plaintiff is acting *pro se,* the court will note that the alleged delay in processing plaintiff's application and the presumption of causation are no longer in issue. The regulations afford an applicant a presumption that an unobserved casualty was caused by a foreign vessel, rather than by weather or other natural causes for which compensation is unavailable. 50 C.F.R. § 258.34(b). Here the reasons given for denial of plaintiff's claim are not failure to prove the source of plaintiff's loss, but failure to prove ownership, rigging, and

deployment of the gear and the extent of the loss.

Defendants' motion is denied. The matter is remanded for further proceedings in accordance with this opinion.

So ordered.